LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAUL RAMIREZ,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

           Plaintiff,


           v.

SOCIAL 8TH AVE CORP.
      d/b/a SOCIAL BAR & GRILL,
WESTSIDE TM CORP.
      d/b/a WEST END BAR & GRILL,
WESTSIDE PUB CORP.
      d/b/a LATITUDE BAR & LOUNGE,
TM 568 CORP.
      d/b/a IVY BAR & GRILL,
TM 358 CORP.
      d/b/a JUNIPER BAR,
TM 701 CORP.
      d/b/a SMITH'S BAR & RESTAURANT,
THOMAS MURPHY, TARA MAGUIRE,
MICHAEL MOLLOY, MICHAEL GILLIGAN,
ROBERT MCKEE, JAMES CASEY MCKEE and
SHAMUS BARNES,

           Defendants.

---

Case No:

**CLASS AND**
**COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff, RAUL RAMIREZ, on behalf of himself, FLSA Collective Plaintiffs and the Class, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, SOCIAL 8TH AVE CORP. d/b/a SOCIAL BAR & GRILL, WESTSIDE TM CORPORATION d/b/a WEST END BAR & GRILL, WESTSIDE PUB CORP. d/b/a LATITUDE BAR & LOUNGE, TM 568 CORP. d/b/a IVY BAR & GRILL, and TM 358 CORP. d/b/a JUNIPER BAR, TM 701 CORP. d/b/a SMITH'S BAR & RESTAURANT ("Corporate Defendants"), THOMAS MURPHY, TARA MAGUIRE, MICHAEL MOLLOY, MICHAEL GILLIGAN, ROBERT MCKEE, JAMES CASEY MCKEE and SHAMUS BARNES ("Individual Defendants" and together with "Corporate Defendants," "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he , FLSA Collective Plaintiffs are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium, (3) unpaid compensation due to time shaving (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and the Class are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium , (3) unpaid compensation due to time shaving, (4) unpaid spread-of-hours premium (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      Plaintiff, RAUL RAMIREZ, for all relevant time periods, was a resident of Kings County, New York.

6.      The Defendants operate six bars in the Midtown West neighborhood of Manhattan, NY with addresses as follows:

   a.      SOCIAL BAR & GRILL − 795 8th Avenue, New York, New York 10019;

   b.      WEST END BAR & GRILL − 813 8th Avenue, New York, New York 10019;

   c.      LATITUDE BAR & LOUNGE − 783 8th Avenue, New York, New York 10036;

   d.      IVY BAR & GRILL − 944 8th Avenue, New York, NY 10019;

   e.      JUNIPER BAR − 237 West 35th Street, New York, NY 10001; and

   f.      SMITH'S BAR & RESTAURANT − 701 8th Avenue, New York, NY 10036

(Collectively, "Bars").

7.      The Bars operate as a single integrated enterprise. Specifically, the Bars are engaged in related activities, share common ownership, have a common business purpose, and have centralized control of labor relations.

   a.      The businesses share common principals and executives, which are listed on the liquor licenses for the Restaurants. Specifically, Individual Defendants THOMAS MURPHY

and MICHAEL MOLLOY are both listed as "Principal" on the active New York State On-Premises Liquor Licenses for the Bars. *See* **EXHIBIT A**, the Bars' On-Premises Liquor License Records.

      b.    While the Bars operate under different trade names, they have been publicly advertised to the general public, customers and employees as a single integrated enterprise owned and operated by the same group of owners, and the various business operations are marketed as part of a single entity. *See* **EXHIBIT B**, a copy of a WEST END BAR & GRILL's profile at New York Magazine; **EXHIBIT C,** a copy of an IVY BAR & GRILL, SOCIAL BAR & GRILL, and LATITUDE BAR & GRILL a/k/a LATITUDE BAR & LOUNGE's article at Resident Magazine; **EXHIBIT D,** a copy of an article calling SOCIAL a/k/a SOCIAL BAR & GRILL a sister bar of SMITH'S BAR & RESTAURANT.

      c.    Supplies and employees are freely interchangeable amongst Bars' locations. Employees were threatened with termination if they did not agree to work at various locations on an as-needed basis. Plaintiff RAMIREZ was frequently required by Defendants to transfer ingredients among the Bars.

    8.    Corporate Defendants

      a.    SOCIAL 8TH AVE CORP., d/b/a SOCIAL BAR & GRILL is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 795 8th Avenue, New York, New York 10019, and an address for service of process at c/o Stern & Panken, LLP, 1025 Westchester Avenue, Suite 305, White Plains, New York 10604;

      b.    WESTSIDE TM CORP., d/b/a WEST END BAR & GRILL is a domestic business corporation organized under the laws of the State of New York with a principal place of

business and an address for service of process located at 813 8th Avenue, New York, New York

10019;

   c.  WESTSIDE PUB CORP., d/b/a LATITUDE BAR & LOUNGE is a

domestic business corporation organized under the laws of the State of New York with a principal

place of business located at 783 8th Avenue, New York, New York 10019, and an address for service

of process at 630 9th Avenue, Suite 1207, New York, NY 10036;

   d.  TM 568 CORP., d/b/a IVY BAR & GRILL is a domestic business

corporation organized under the laws of the State of New York with a principal place of business and

an address for service of process located at 944 8th Avenue, New York, NY 10019;

   e.  TM 358 CORP., d/b/a JUNIPER BAR is a domestic business corporation

organized under the laws of the State of New York with a principal place of business located at 237

West 35th Street, New York, NY 10001, and an address for service of process located at 944 8th

Avenue, New York, NY 10019; and

   f.  TM 701 CORP., d/b/a SMITH'S BAR & RESTAURANT is a domestic

business corporation organized under the laws of the State of New York with a principal place of

business and an address for service of process located at 701 8th Avenue, New York, NY 10036.

  9.  Individual Defendants

   a.  THOMAS MURPHY is a principal of the Bars. He regularly visits each of

the restaurants. THOMAS MURPHY exercised control over the terms and conditions of the

Plaintiff, FLSA Collective Plaintiffs and Class members. He exercised the power and authority

to fire and hire, determined rate and method of pay, determined work schedules and otherwise

affected the quality of employment, of Plaintiff, the FLSA Collective Plaintiffs and the Class

members.  He also had the power and authority to supervise and control supervisors of Plaintiff, the FLSA Collective Plaintiffs and the Class members.

b.       TARA MAGUIRE is a principal of SOCIAL BAR & GRILL, LATITUDE BAR & LOUNGE, and SMITH'S BAR & RESTAURANT, and a Chief Executive Officer of SOCIAL BAR & GRILL. She exercised control over the terms and conditions of the Plaintiff, FLSA Collective Plaintiffs and Class members' employment. She exercised the power and authority to fire and hire; determined rate and method of pay, determined work schedules and otherwise affected the quality of employment, of Plaintiff, the FLSA Collective Plaintiffs and the Class members.  She also had the power and authority to supervise and control supervisors of Plaintiff, the FLSA Collective Plaintiffs and the Class members.

c.       MICHAEL MOLLOY is a principal of the Six Bars. He is also responsible for ordering all necessary appliances of all the Restaurants. MICHAEL MOLLOY exercised control over the terms and conditions of the Plaintiff, FLSA Collective Plaintiffs and Class members. Along with other Individual Defendants he exercised the power and authority to fire and hire, determined rate and method of pay, determined work schedules and otherwise affected the quality of employment, of Plaintiff, the FLSA Collective Plaintiffs and the Class members. He also had the power and authority to supervise and control supervisors of Plaintiff, the FLSA Collective Plaintiffs and the Class members.

d.       MICHAEL GILLIGAN is a principal of SOCIAL BAR & GRILL, WEST END BAR & GRILL, LATITUDE BAR & LOUNGE, and IVY BAR & GRILL. MICHAEL GILLIGAN exercised control over the terms and conditions of the Plaintiff, FLSA Collective Plaintiffs and Class members. He exercised the power and authority to fire and hire, determined rate and method of pay, determined work schedules and otherwise affected the quality of

employment, of Plaintiff, the FLSA Collective Plaintiffs and the Class members. He also had the

power and authority to supervise and control supervisors of Plaintiff, the FLSA Collective

Plaintiffs and the Class members. He was responsible for stocking liquor in all the Restaurants.

Although, he worked full time at West End Bar and Grill, he visited other Restaurants on a

regular basis, at least once a week.

e.       ROBERT MCKEE is a principal of SOCIAL BAR & GRILL and WEST

END BAR & GRILL. ROBERT MCKEE exercised control over the terms and conditions of the

Plaintiff, FLSA Collective Plaintiffs and Class members. He exercised the power and authority

to fire and hire, determined rate and method of pay, determined work schedules and otherwise

affected the quality of employment, of Plaintiff, the FLSA Collective Plaintiffs and the Class

members. He also had the power and authority to supervise and control supervisors of Plaintiff,

the FLSA Collective Plaintiffs and the Class members.

f.       JAMES CASEY MCKEE is a principal of SOCIAL BAR & GRILL and

WEST END BAR & GRILL. JAMES CASEY MCKEE exercised control over the terms and

conditions of the Plaintiff, FLSA Collective Plaintiffs and Class members. He exercised the

power and authority to fire and hire, determined rate and method of pay, determined work

schedules and otherwise affected the quality of employment, of Plaintiff, the FLSA Collective

Plaintiffs and the Class members. He also had the power and authority to supervise and control

supervisors of Plaintiff, the FLSA Collective Plaintiffs and the Class members.

g.       SHAMUS BARNES is a principal of SOCIAL BAR & GRILL and WEST

END BAR & GRILL. SHAMUS BARNES exercised control over the terms and conditions of

the Plaintiff, FLSA Collective Plaintiffs and Class members. He exercised the power and

authority to fire and hire, determined rate and method of pay, determined work schedules and

otherwise affected the quality of employment, of Plaintiff, the FLSA Collective Plaintiffs and the

Class members. He also had the power and authority to supervise and control supervisors of

Plaintiff, the FLSA Collective Plaintiffs and the Class members.

10.   At all relevant times, Corporate Defendants were and continue to be "enterprises

engaged in commerce" within the meaning of the FLSA.

11.   At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and

Class members was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.   Plaintiff brings claims for relief as a collective action pursuant to FLSA Section

16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including but not limited to

cooks, line-cooks, dishwashers, food preparers, porters, runners, bussers, waiters, barbacks, and

bartenders) employed by Defendant on or after the date that is six years before the filing of the

Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

13.   At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have

been similarly situated, have had substantially similar job requirements and pay provisions, and

are and have been subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them minimum wages, and overtime premium at the rate of one and one half times the regular rate

for work in excess of forty (40) hours per workweek. The claims of Plaintiff stated herein are

essentially the same as those of the other FLSA Collective Plaintiffs. In addition, with regard to

Plaintiff and a subgroup of FLSA Collective Plaintiffs who were tipped employees (i.e. barbacks,

bartenders, waiters, porters, bussers) (the "Tipped Subclass"), Defendants were not entitled to take

any tip credits, or to compensate FLSA Collective Plaintiffs at sub-minimum wage base hourly

rates, because they failed to meet statutory requirements under the FLSA. Plaintiff is a member of both the Class and Tipped Subclass. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

14.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS- NEW YORK

15.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons (including but not limited to cooks, line-cooks, dishwashers, food preparers, porters, runners, bussers, waiters, barbacks, and bartenders) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period"). The Class further includes a subclass of tipped employees (the "Tipped Subclass").

16.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each Class member may also be determinable from Defendans' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of waiters, servers, runners, delivery persons and busboys (the "Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

18.   Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay minimum wages due to an invalid tip credit being claimed, (ii) failing to pay overtime premium for hours worked in excess of 40 per workweek, (iii) failing to pay proper wages due to time shaving, (iv) failing to pay spread of hours premium, and (v) failing to provide proper wage statements per requirements of the New York Labor Law. With regard to Plaintiff and the Tipped Subclass, Defendants were not entitled to take any tip credits because they failed to meet statutory requirements under the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

19.   Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

20.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

d) Whether Defendants properly notified Plaintiff and Class members of their regular hourly rate and overtime rate;

e) Whether Defendants failed to keep true and accurate time records for all hours worked by the Class Members;

f) Whether Defendants failed to pay Class members compensation for all of the hours they worked;

g) Whether Defendants caused Class members to work off-the-clock in violation of applicable New York Labor Laws;

h) Whether Defendants failed to pay Class members spread-of-hours premium;

i) Whether Defendants satisfied all of the statutory requirements in order to take a tip credit, in particular whether they:

  i. properly provided notice to members of the Tipped Subclass that Defendants were taking a tip credit;

  ii. subjected the Tipped Subclass to an invalid tip-pooling scheme by which such members did not agree to the pooling scheme and where managers illegally retained tips;

  iii. took proper amount of tip credit allowance under the New York Labor Law with respect to the tipped subclass;

  iv. required Plaintiff and Tipped Subclass members to perform non-tipped work for more than 20 percent of their workday;

  v. maintained daily records of tips earned by the Tipped Subclass; and

  vi. provided notice to members of the Tipped Subclass of the amount of the tip credit allowance claimed to each member of the Tipped Subclass for each pay period;

j) Whether Defendants provided to Plaintiff and Class members proper wage and hour notice, at date of hiring and annually, per requirements of the New York Labor Law;

k) Whether Defendants provided to Plaintiff and Class members proper wage statements with each payment of wages as required by New York Labor Law; and

l) Whether Defendants properly compensated Plaintiff and Class members for overtime under state and federal law.

**STATEMENT OF FACTS**

23.     Throughout RAUL RAMIREZ's employment with Defendants, he was employed to work at SOCIAL BAR & GRILL located at 795 8th Avenue, New York, New York 10019. From in or about January 2004 to in or about December 2010, Plaintiff RAUL RAMIREZ was employed by Defendants as a cook. From in or about January 2011 to in or about January 2015, Plaintiff worked six days a week, he was employed as a barback and food runner for 1 day a week, and he was employed as a cook for 5 days a week. From in or about February 2015 to on or about March 30, 2017, Plaintiff was employed as a cook. In the past six years, Plaintiff RAUL RAMIREZ was also required to work at LATITUDE BAR & LOUNGE and WEST END BAR & GRILL on an as needed basis.

24.     Throughout Plaintiff's employment, he regularly worked over 40 hours per week, and over 10 hours per day.

   a.   From in or about January 2011 to in or about December 2012, Plaintiff regularly worked from 3:00 p.m. to 1:00 a.m. for 6 days a week, for a total of 60 hours per week.

   b.   From in or about January 2013 to in or about January 2015, Plaintiff regularly worked for 6 days a week, for a total of 69 hours per week. Specifically, he had a regular work schedule of 10:00 a.m. to 8:00 p.m. for 3 days a week, and 10:00 a.m. to 11:00 p.m. for the other 3 days a week.

   c.   From in or about February 2015 to in or about December 2016, Plaintiff regularly worked from 11:00 a.m. to 7:00 p.m. for 6 days a week, for a total of 48 hours per week.

   d.   From in or about January 2017 to on or about March 30, 2017, Plaintiff regularly worked from 11:00 a.m. to 7:00 p.m. for 5 days a week, for a total of 40 hours per week.

25.     From in or about January 2011 to in or about January 2015, on the days when Plaintiff was employed as a cook, he was paid at an hourly a rate of $9.00 in cash for all hours worked, including all hours over 40 per week; on the days when Plaintiff was employed as a barback, he was paid at an hourly rate of $4.00 in cash for all hours worked, including all hours over 40 per week; while he was employed as a barback, he was also required to serve food as a food runner. From in or about February 2015 to on or about March 30, 2017, Plaintiff was paid at an hourly a rate of $14.00 in cash for all hours worked, including all hours over 40 per week.

26.     Throughout Plaintiff's employment with Defendants, Plaintiff was not paid for up to 2 hours per week due to Defendants' illegal time shaving practice.

27.     From in or about January 2011 to in or about January 2015, on the days when Plaintiff was employed as a barback and food runner (tipped employee). Defendants paid Plaintiff at an hourly rate of $4.00, below the statutory minimum wage for food service workers, even assuming a valid tip credit allowance.

28.     Plaintiff and Tipped Subclass members did not receive any notice that Defendants were taking a tip credit. In addition, they did not receive any notice as to the amount of tip credit allowance taken for each payment period during their employment. They were also never informed in writing as to their hourly rate of pay and overtime rate of pay.

29.     Plaintiff and Tipped Subclass members were required by management to participate in an invalid "tip pooling" scheme. Plaintiff and members of the Tipped Subclass never agreed upon their tip allocation percentage which was assigned by management and not agreed upon mutually among tipped employees. At all times, the tip-pooling scheme was controlled by Defendants, and not agreed to by tipped employees. Non-tipped employees such as managers also shared in the tip pool although they did not serve customers.

30.     Plaintiff and Tipped Subclass members did not receive any notice that Defendants were claiming a tip credit on tipped employees' compensation.  He was never explained that Defendants were claiming a tip credit allowance and did not receive any notice as to the amount of tip credit allowance taken for each payment period during his employment.

31.     Plaintiff and Tipped Subclass members were required to follow the tip payment structure instituted by the Defendants, in which Plaintiff and other bar backs were distributed 20% of the bar's tips from the bartenders, and Plaintiff and other runners and bussers were given 10% of the servers' tips. Such tip payment structure was not determined or agreed upon by Plaintiff and tipped employees.

32.     During his employment with Defendants as a tipped employee from in or about January 2011 to in or about January 2015, Plaintiff was required to engaged in various non-tipped activities, such as cleaning the third floor terrace, washing dishes, accepting/unloading incoming deliveries, and preparing food, for more than 2 hours or twenty (20) percent of each shift. Other tipped employees also were required to engage in such similar non tipped activities for more than 2 hours or 20% of each shift.            33.     Other non-exempt employees worked similar hours, received similar compensation, and were similarly not provided with any paystubs, wage notices or wage statements.

34.      Although Plaintiff, FLSA Collective Plaintiffs and Class members regularly worked over forty hours per week, Defendants never paid them at the required overtime premium rate.

35.     At times, Defendants paid Plaintiff, the FLSA Collective Plaintiffs and the Tipped Subclass members, less than the statutory minimum wage, even assuming a valid tip credit allowance. Defendants were not entitled to take any tip credits under the FLSA or NYLL, because

they (i) exceeded the maximum amount of tip credit allowance that could be claimed under the NYLL, (ii) failed to properly provide notice to all tipped employees that Defendants were taking a tip credit in violation of the FLSA and NYLL, and (iii) failed to provide proper wage statements informing tipped employees of the amount of tip credit taken for each payment period in violation of the NYLL.

36.     Plaintiff and other Class Members regularly worked over 10 hours a day, but they were never paid spread-of-hours premium.

37.     At no time during the relevant time periods did Defendants provided Plaintiff or Class members with proper wage notices or wage statements as required by NYLL. Defendants failed to provide Plaintiff and Class members with paystubs to reflect their hours worked or hourly rate.

38.     Defendants unlawfully failed to compensate Plaintiff, the FLSA Collective Plaintiffs, and Class members for up to 4 hours per week due to Defendants' time shaving policy. On an ad hoc basis, Defendants would fail to pay Plaintiff, FLSA Collective Plaintiffs and Class members for all of their hours worked.

39.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffsand Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF

## PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

40.     Plaintiff realleges and reavers Paragraphs 1 through 39 of this class and collective action Complaint as if fully set forth herein.

41.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).   Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

42.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

43.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.00.

44.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek.

45. At all relevant times, the Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and FLSA Tipped Plaintiffs for their hours worked. Defendants did not satisfy the statutory requirements for paying the tip credit minimum wage for reasons set forth above. This violation was willful in that Defendants knew or should have known that they had not satisfied the statutory requirements for taking tip credits.

46.     At all relevant times Defendants were engaged in the practice of time shaving by failing to compensate Plaintiff and FLSA Collective Plaintiffs for up to 4 hours per week.

47.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain all records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

48.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

49.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

50.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, unpaid compensation due to time shaving plus an equal amount as liquidated damages.

51.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF

## PLAINTIFF AND CLASS MEMBERS

52.     Plaintiff realleges and reavers Paragraphs 1 through 51 of this class and collective action Complaint as if fully set forth herein.

53.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.  Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them compensation for all of the hours they worked.

54.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of

pay for each hour worked in excess of forty hours in a workweek.

55.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay the spread of hours premium required by state law.

56.     Defendants failed to properly notify Plaintiff and Class members of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

57.     Defendants willfully violated Plaintiff's and Tipped Subclass members' rights by failing to pay Plaintiff's minimum wages in the lawful amount for hours worked.  Defendants did not satisfy the statutory requirements for paying the tip credit minimum wage for reasons set forth above. This violation was willful in that Defendants knew or should have known that they had not satisfied the statutory requirements for taking tip credits.

58.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

59.     Defendants failed to provide proper wage statements with every payment as required by New York Lab. Law § 195(3).

60.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime, unpaid compensation due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.       An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each and unlawful practices, policies and patterns set forth herein;

c.       An award of unpaid minimum wages due under FLSA and the New York Labor Law;

d.       An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

e.       An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

f.       An award of liquidated and/or punitive damages as a result of Defendants' willful time-shaving practice and failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

g.       An award of liquidated and/or punitive damages as a result of Defendants' willful time-shaving practice and failure to pay overtime compensation and spread-of-hour premium pursuant to the New York Labor Law;

h.       An award of the spread of hours pay pursuant to the New York Labor Law;

i.       An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.       Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.       Designation of this action as a class action pursuant to F.R.C.P. 23;

l.       Designation of Plaintiff as Representative of Class; and

m.       Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: March 7, 2018

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*


By: _____ */s/ C.K. Lee* _____
       C.K. Lee, Esq. (CL 4086)